UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ANITA ARTT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | CIVIL ACTION NO. |
| | ) | |
| EXELIXIS US LLC, | ) | 3:20-CV-2528-G |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the motion of the defendant Exelixis US LLC ("Exelixis")

for summary judgment (docket entry 19).  For the following reasons, the motion is

granted.

### I.  BACKGROUND

Exelixis, an oncology-focused biotechnology company, "develops and

commercializes new medicines for difficult-to-treat cancers."  Defendant's Brief in

Support of its Motion for Summary Judgment ("Motion") (docket entry 20) at 1.

The plaintiff Anita Artt ("Artt"), formerly employed by Exelixis, alleges that Exelixis

wrongfully terminated her employment.  *See generally* Plaintiff's Original Petition and

Request for Disclosure ("Petition"), *attached to* Defendant's Notice of Removal

("Notice") (docket entry 1) as Exhibit C; *see also* Appendix in Support of Defendant

Exelixis US LLC'S Motion for Summary Judgment ("Defendant's Appendix") (docket entry 21) at APP. 126.

Renee Schmutte ("Schmutte"), then Exelixis's National Director, Medical Science Liaisons[1] ("MSLs"), and William Berg ("Berg"), Exelixis's Senior Vice President, Medical Affairs, interviewed Artt for a position at Exelixis.[2]  Motion at 1-2; Defendant's Appendix at APP. 001-APP. 002.  Artt and Berg were former work colleagues.  Motion at 2; Defendant's Appendix at APP. 012.  Artt initially interviewed with Schmutte by telephone, followed by in-person interviews with Schmutte and Berg.  Defendant's Appendix at APP. 012-APP. 015; *see also* Motion at 2.  At the time of the interviews, Schmutte and Berg were close to or over the age of 50, and Artt was 59 years of age.[3]  Motion at 2; Petition at 2.  Schmutte and Berg

---

[1]	A Medical Science Liaison is an Exelixis employee "sent out into the field to educate medical professionals about [Exelixis]'s products."  Plaintiff's Response to Defendant's Motion for Summary Judgment ("Response") (docket entry 25) at 2.

[2]	Schmutte now serves as Exelixis's Vice President, U.S. MSLs. Defendant's Appendix at APP. 001.

[3]	The court notes that, while Exelixis characterizes Schmutte and Berg as being "both over the age of fifty[,]" *see* Motion at 2, in the context of summarizing the timeline for Artt being interviewed and hired by Exelixis, Schmutte declares that she was 50 years of age at the time of Artt's termination, *see* Defendant's Appendix at APP. 005.  Because Exelixis hired Artt in January of 2016, *see* Motion at 2, and terminated her employment in June of 2019, see *id.*, the court therefore concludes that Schmutte would have been older than 40 years of age but younger than 50 years of age during the process of interviewing and hiring Artt.  Similarly, Exelixis incorrectly asserts that it "hired Artt (then age 60)[,]" see *id.* at 1, however, Artt was

(continued...)

recommended that Exelixis hire Artt.  Defendant's Appendix at APP. 002; *see also* Motion at 2 ("Schmutte and Berg . . . collectively consulted and made the decision to hire [Artt] following that interview.").

In January of 2016, Exelixis hired Artt, then age 59, as a Senior Regional Director, MSLs, and Artt was based in Dallas, Texas.[4]  Motion at 1-2; Response at 2. Artt came to Exelixis as "an accomplished health care professional[.]"  Petition at 2; *see also* Response at 1-2.  Artt, as Exelixis's Senior Regional Director of the Western Region, reported directly to Schmutte, and Schmutte reported to Berg.  Defendant's Appendix at APP. 001; Motion at 2.  Artt's job duties "included managing and supervising a team of [eight] MSLs who worked remotely throughout the western half of the United States, including San Diego, San Antonio, Seattle, Phoenix, Houston, and Denver."  Motion at 2; *see also* Response at 2.  Artt "was responsible to fill those positions and to support and oversee the work of the MSLs under her supervision."  Response at 2.

At a medical affairs meeting in the summer of 2016, Artt contends that Schmutte first discovered that Artt was 60 years of age, and thereafter Schmutte

_____

[3](...continued)
59 years of age at the time Exelixis interviewed and hired her.  *See* Petition at 2; *see also* Response at 2.

[4]      On January 19, 2016, Artt signed an offer letter from Exelixis.  *See* Defendant's Appendix at APP. 08 l-APP. 082.

treated Artt differently due to Artt's age.  Defendant's Appendix at APP. 021.  At this
meeting, Artt maintains that Schmutte overheard Artt and Artt's colleague talking
about vacations, a conversation prompted by a photograph displayed on Artt's
computer of Artt wearing a T-shirt which read "Anita is 60[.]"  *Id.* at APP. 021-APP.
023; Response at 2.  Schmutte allegedly responded, "Oh, my gosh, I thought you
were in your late 40s."  Defendant's Appendix at APP. 021; *see also* Response at 2.
Exelixis argues that even if Schmutte made this comment, "it does not lead a
reasonable person to conclude that Schmutte's remark was meant literally . . . [as]
individuals may make polite remarks referencing someone looking 'good for their age'
or 'looking younger than they are' in an attempt to be friendly or even be
complimentary.  Such comments are rarely construed to be taken literally as evidence
of how old the speaker thought the person to be."  Defendant's Reply Brief in
Support of its Motion for Summary Judgment ("Reply") (docket entry 27) at 6.

      Also in the summer of 2016, Artt contends that she began to notice that
Schmutte and Berg "would get together in groups in the evenings with younger
workers, including the MSLs, and [Artt] and her counterpart from the east coast,
Larry O'Neal, who were the older employees at the meetings, would not be included
in these social times."  Response at 2-3.  In 2017, for example, Artt complains that
she was excluded from "casual meetings[,]" which she defines as "go have drinks
together" events.  Defendant's Appendix at APP. 028; see also, *e.g.*, *id.* at APP.

029-APP. 031.  According to Artt, these casual meetings took place after normal business hours (*i.e.*, after "6:00 at night") – "at the end of the day, dinner or cocktails."  *Id*. at APP. 031.  Artt maintains that "[t]his conduct on the part of Schmutte and Berg continued throughout [Artt]'s employment with Defendant."  Response at 3.  However, Artt admits that neither Schmutte nor Berg ever told Artt that she could not join them for any event after work.  See, *e.g.*, Defendant's Appendix at APP. 025, APP. 031.

Artt generally asserts that Schmutte "seemed to want to 'clump' herself with younger workers and ignore the older workers, and this sometimes resulted in promotions being given to younger workers who were not qualified for the promotions."  Response at 3.  Artt also complains that Schmutte and Berg shared information with younger Exelixis employees that Artt was not privy to, such as the "[p]olitical inner-workings at the company."  Defendant's Appendix at APP. 026; see also *id*. at APP. 027.  Further, Artt contends that during 2018 Exelixis awarded new projects and opportunities to "younger employees" whom she supervised while her "only role was in supervision of her direct reports who were working on the trials."  Response at 3.

In 2016 and 2017, Schmutte awarded Artt "positive performance reviews" on annual performance evaluations.  Motion at 3.  Subsequently, however, Exelixis contends that "as Artt's employment continued, Schmutte became increasingly aware

- 5 -

of significant problems with Artt's communication and management styles toward

subordinate employees and others."  *Id*.; *see also* Defendant's Appendix at APP. 002.

On September 6, 2018, Schmutte addressed "leadership and communication

issues with Artt in a 1:1 meeting" and again during Artt's 2018 mid-year performance

review ("2018 Mid-Year Review") meeting held on September 18, 2018.  Motion at

3.  Exelixis maintains that the following occurred during the 2018 Mid-Year Review

meeting.

> In the September 18th meeting, Schmutte advised Artt
> that she had significant concerns about Artt's
> communication and professionalism issues in managing her
> team.  Schmutte also discussed Artt's subordinate
> turnover.  Schmutte advised that Artt's managerial style
> needed adjustment, specifically in the areas of
> communication and conflict resolution, also reflected in
> Schmutte's comments on Artt's 2018 mid-year review.

*Id*. at 3-4; *see also* Defendant's Appendix at APP. 002 ("I had concerns about [Artt's]

leadership style, the need for a more positive team culture, and her turn-over rate on

her team. . . . These concerns were reflected in Artt's 2018 mid-year review, which I

administered and provided coaching on the same on or about September 18, 2018.");

Response at 4.  In her 2018 Mid-Year Review, Artt scored lowest in the following

categories:  Relationships/Collaboration, Building Effective Teams, and

Transformational Leadership.  *See* Defendant's Appendix at APP. 097.  Artt

"vehemently disagreed" with her 2018 Mid-Year Review and asserts that two of her

MSLs reported good relationships with her when interviewed by Exelixis's human

- 6 -

resources department ("Human Resources").  Response at 4.

On September 21, 2018, Artt sent an email to Laura Dillard ("Dillard"), then Senior Vice President of Human Resources, in which Artt expressed displeasure with her 2018 Mid-Year Review.  Motion at 4; *see also* Defendant's Appendix at APP. 100 ("I am very concerned about my recent conversations with Renee [Schmutte] and the unsatisfactory written midyear documentation I received from her earlier this week.  I do not agree with her characterization of these situations or her assessment of my performance.").  Exelixis notes that "[n]owhere in Artt's email to Human Resources . . . does Artt allege discrimination, retaliation, or harassment based on any legally protected category."  Motion at 4.

On September 27, 2018, Exelixis asserts that Artt revealed an employee's confidential medical information during a team meeting for the second time.[5]  *Id*. at 3.  In a departmental meeting on the same day, Artt allegedly "inappropriately asked [Exelixis]'s CEO to divulge sensitive, non-public information about the Company."  *Id*.  Artt disputes both allegations, maintaining that in the former meeting she asked Berg "what the individual's prognosis was[,]" and in the latter meeting inquired about "whether the company was still getting offers to be bought."  Response at 7.

On or about October 1, 2018, Artt's team members anonymously reported

---

[5]      On August 31, 2018, Artt allegedly first "revealed an employee's confidential medical procedures and treatments during a team meeting."  Motion at 3.

concerns about Artt's leadership, management, and communication styles via an

online survey.[6]   Motion at 4; Defendant's Appendix at APP. 002; *see also* Addendum

to Appendix in Support of Defendant Exelixis US LLC'S Motion for Summary

Judgment ("Defendant's Appendix Addendum") (docket entry 24) at ADDENDUM

APP. 001-ADDENDUM APP. 022.   According to Schmutte, the survey revealed the

following:

> [E]mployees' 360 survey feedback reports alleged that Artt
> had a harsh and aggressively agitated demeanor when
> interacting with her team such that her direct reports were
> reluctant to communicate with her. . . .
>
> Employees reported that Artt's delivery style of criticism
> was not constructive; instead, employees reported that Artt
> delivered criticism in an angry manner. . . .
>
> They also reported that Artt gave harsh criticism to her
> direct reports in group settings rather than privately,
> causing unnecessary embarrassment and divisiveness.

Defendant's Appendix at APP. 002; *see also* Defendant's Appendix Addendum at

ADDENDUM APP. 001-ADDENDUM APP. 022.   Artt dismisses the survey results,

maintaining that Exelixis "'cherry picked' [respondents] to find the ones with the

highest potential to point out negative qualities and with whom Schmutte had

longstanding relationships from working together at previous companies."   Response

at 5.

---

[6]      Eight respondents completed the survey.  *See* Defendant's Appendix
Addendum at ADDENDUM APP. 002.

- 8 -

On October 16, 2018, Artt sent an email to Olivia Brown ("Brown"), Senior Manager of Human Resources, in which Artt complained about her 2018 Mid-Year Review.  Motion at 5; see also *id*. ("Artt's October 16th email similarly contains no mention of alleged discrimination, retaliation, or harassment based on any protected category."); Defendant's Appendix at APP. 174.  Later that day, Schmutte placed Artt on a 90-day performance improvement plan ("PIP").  Motion at 5.  Schmutte outlined the PIP in an email to Artt.  *See generally* Defendant's Appendix at APP. 188-APP. 191.  The email read, in pertinent part, as follows:

> During the past months, it has become clear that your performance has been falling below expectations for your position.  On 3/7/18 (LR1 Meeting), 9/6/18 and 9/18/18, you were counseled about the issues detailed below.
>
> * * *
>
> Specific examples of performance issues include:
>
> **1.  Communication:**
> I have directly observed instances and received feedback where you have spoken with your colleagues and employees in an inappropriate and unprofessional manner.
>> • In a departmental meeting on 9/27/18 you asked a question to our CEO, Michael Morrissey, inquiring who has offered to purchase the Company.  My expectation is that someone at your senior level of management would not ask our CEO to divulge sensitive, non-public information in an employee meeting.

- On two separate occasions on 8/31/18 and 9/27/18, you brought up a medical procedure with me and the medical treatment of a senior member of management as a group discussion point. Discussions about an employee's medical treatment and procedures are generally inappropriate, and discussions in a group setting especially violate an employee's privacy.

## 2. Relationships and Collaborations

On multiple occasions, you have comported yourself inappropriately in front of business partners. In these situations, I have had to direct you to modify your behavior in order to maintain professional work relationship with your colleagues. A specific example includes:

- During a HCC launch (LR1) meeting in March 2018, I let you know that I was having drinks with Joann Prushinski. You took great offense to the fact I was meeting alone with Joanne for drinks. You demanded to know why we were getting together. I was later informed by Joanne that she had discovered you in the hotel bathroom and you were extremely upset about the situation. As a result, Joanne was confused and uncomfortable by your behavior. As discussed on 3/7/2018, my expectation is that you would not exhibit such an unprofessional overreaction in front of our functional business partners. After this incident, you continued to demonstrate this lack of composure in several other incidents with either me and your direct reports.

3.  **Conflict Management:**
In our 1:1 meeting on 9/6 and during our mid-year
evaluation on 9/18, you blamed others including myself for
retention issues in your group.  You also failed to take
responsibility and accountability for issues such as
employee retention.  When I have tried to counsel you
about these concerns, you refused to listen to constructive
feedback or to work with me in order to change your team
dynamics.

\* \* \*

4.  **Building Effective Teams**
In September 2018, I received feedback from a business
partner that there are issues with your team that I was
urged to look into.  After reviewing the situation, I am
extremely concerned that there is low employee morale
among your employees due to issues and concerns with
your management style.  I understand that your direct
reports generally do not feel supported by you, in large
part because your delivery style of criticism is not
constructive.  For example, employees have reported that
you deliver feedback in an angry manner and also feel
"attacked" when you provide feedback in a group setting
rather than privately, which has caused unnecessary
embarrassment.  As a result, certain members of the team
have let me know that they have seriously considered other
opportunities outside the Company due to your
management style.

\* \* \*

We hope that the foregoing feedback and suggestions will
enable you to improve your performance to an acceptable
level.  We at Exelixis are available to assist you in this
endeavor, and we look forward to your positive
contributions.

*Id*. at APP. 188-APP. 189, APP. 191.

Artt contends that "[t]he obvious inaccuracy of these criticisms in the PIP and the negative review cause [her] to come to the conclusion that Schmutte wanted to replace her with someone younger." Response at 7. In November of 2018, Artt generally contends that "[she] conducted in-depth interviews with her current MSLs on her team and received no negative comments regarding her management style." Petition at 3-4.

Exelixis avers that "Schmutte met with Artt periodically during the PIP and provided her with an updated PIP reflecting their meetings and Artt's marked progress." Motion at 5. On January 11, 2019, Artt successfully completed the PIP, a feat which Exelixis asserts was accomplished with Schmutte's assistance. See *id.*; Defendant's Appendix at APP. 003 ("I personally worked with Artt to help her successfully meet the goals set out in her PIP, and I met with her regularly to review her progress.").

On March 4, 2019, Schmutte met with Artt to deliver Artt's 2018 annual performance evaluation ("2018 Year-End Evaluation") on which Artt received an average score of 2 out of 3 possible points.[7] Motion at 6; *see generally* Defendant's Appendix at APP. 119-APP. 124. As a result of Artt's 2018 Year-End Evaluation, including low scores in two categories (*i.e.*, Conflict Management and

---

[7]     Shortly after her 2018 Year-End Evaluation meeting with Schmutte, Artt contends that "Schmutte said 'we have to figure out how to motivate our millennials[]' [and] also asked about Artt's succession plan." Petition at 5.

Transformational Leadership),[8] Exelixis reduced Artt's bonus and merit pay increase amounts.  Motion at 6; Defendant's Appendix at APP. 063-APP. 064; *see also* Petition at 4 ("Her annual bonus was decreased by 25% and she received a 1% merit increase versus the average 3-4% given to her team members.").

Artt attached a one-page, untitled document ("2018 Year-End Evaluation Addendum") to her 2018 Year-End Evaluation on which she handwrote the message: "comments attached to review before signing on Mar 7, 2019[.]"  Defendant's Appendix at APP. 125; see also *id*. at APP. 065 ("There was nowhere on the form for me to add any comments.  So I attached this and then signed it."); Motion at 6. Above her handwritten notation, Artt typed the following paragraph, which she concedes is the only document that raises the issue of age discrimination to Exelixis. *See* Defendant's Appendix at APP. 065-APP. 067.[9]

> During the end of the year review discussion with my manager on March 4, 2019, she mentioned that I only had two more years to work before retirement.  I told her I was surprised that she brought this up as I had never discussed retirement with her or anyone else at Exelixis.  Then she

---

[8]       *See* Defendant's Appendix at APP. 121, APP. 123-APP. 124.

[9]       "Q.  So this document in Exhibit l6 [*i.e.*, 2018 Year-End Evaluation Addendum], this is the only document you ever sent to the company that, in your mind, raises age discrimination, correct?

         A.  Yes."

Defendant's Appendix at APP. 067 (Artt deposition).

> said "we could be very creative" with what I could do for
> the company now.  She suggested creating a position
> reporting to one of the Medical Directors reading and
> editing documents.  I would no longer manage people.  I
> told her I would not be willing to take a demotion.

*Id*. at APP. 125; *see also* Response at 7-8.

Artt also uploaded her 2018 Year-End Evaluation Addendum to Exelixis's

online performance review system.  Defendant's Appendix at APP. 065; Motion at 6.

Exelixis asserts that the 2018 Year-End Evaluation Addendum is "Artt's sole alleged

report of age discrimination.  It was not addressed to anyone in particular, and did

not request any Company action.  Artt admitted at deposition that she did not follow

up on this upload, did not know who received or reviewed it, and has produced no

evidence that Schmutte ever saw it or knew about it before Artt's termination."[10]

Motion at 6; see also *id*. at 18-19.  Moreover, Exelixis maintains that Artt "as a

manager, had been trained on . . . reporting procedures [for claims of discrimination]

as well as her corresponding managerial responsibilities to ensure the Company's

anti-discrimination/harassment/retaliation policies were enforced."  *Id*. at 19; *see also*

Defendant's Appendix at APP. 090-APP. 091.

---

[10]     On January 19, 2016, Artt acknowledged receipt of Exelixis's corporate
code of conduct and employee handbook.  *See* Defendant's Appendix at APP. 085,
APP. 089.  The employee handbook detailed Exelixis's position on age discrimination
and outlined what employees should do if they experienced discrimination.  See *id*. at
APP. 086-APP. 088.  Artt was also aware of a procedure by which she could report
incidents of discrimination anonymously.  *Id*. at APP. 088.

On or about March 4, 2019, Artt allegedly held a meeting ("March 4 meeting") with MSL Chris DeSevo ("DeSevo"), "one of Artt's direct reports[.]" Motion at 7.  During this meeting, Exelixis asserts that "Artt confronted [DeSevo] about the negative feedback he had provided to Schmutte . . . [and] blamed [DeSevo] for the fact that she did not receive the maximum 2018 bonus and merit increase she expected."  *Id*.

On March 5, 2019, Artt was diagnosed with scoliosis and other spinal abnormalities, and her physician scheduled a surgery for May 13, 2019.  Petition at 5.  As a result, Artt was granted a 90-day leave pursuant to the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, *et seq*.  *Id*.  In addition, Artt received "Short-Term Disability Salary Continuation Benefits" which covered "100% salary for days 8-60 of the leave and 60% for days 61-90, with the ability to use PTO hours to compensate for the other 40%."  *Id*. at 5-6.

On May 1, 2019, DeSevo resigned and "advised Schmutte that, because of Artt's verbal altercation with him, he decided to leave the Company to avoid having to work with Artt . . .[, and] he feared retaliatory aggression from Artt . . . so he did not tell anyone about the March 4th altercation until he had secured a new job with another company."  Motion at 7; *see also* Defendant's Appendix at APP. 003.

Schmutte reported her conversation with DeSevo to Human Resources. Defendant's Appendix at APP. 003; see also *id.* at APP. 198. An email from Schmutte to Brown, Berg, and Dillard, dated May 1, 2019, read, in pertinent part, as follows:

> I spoke to Chris [DeSevo] and despite our efforts to attempt to make some adjustments in compensation and removing Anita [Artt] as his manager, he is still ready to move on. He complimented Exelixis for his time here and opportunity to grow. Unfortunately, he is mentally ready to move on. We had a nice discussion and he gave me the exact feedback he gave Will [Berg] about Anita [Artt]. Essentially, immediately following my end of review with Anita [Artt] they had a planned 1:1 and she proceeded to tell him about her review with me, salary compensation and stating that this was his fault. He is unaware of other conversations like this with the team but does feel like many on her team are "at risk" for leaving.

*Id.* at APP. 198. Thereafter, Human Resources launched an investigation and interviewed Artt, DeSevo, and two other members of Artt's team. Motion at 8; Defendant's Appendix at APP. 003-APP. 004. Artt discounts DeSevo's claims, describing him as "an ambitious young man impatient to move up in the organization, and he had Anita [Artt] standing in his way." Response at 9.

On May 9, 2019, Human Resources interviewed Artt about the March 4 meeting with DeSevo, but Artt either claimed that she could not recall what the two had discussed during that meeting or denied making any statements to DeSevo about her 2018 Year-End Evaluation or decreased bonus and merit pay amounts. *See* Defendant's Appendix at APP. 004; Response at 9. Exelixis "found the evidence

- 16 -

provided by DeSevo to be credible, because he knew about Artt's bonus and merit increase, which he could have only learned about from Artt." Motion at 8. Exelixis contends that "[t]he investigation confirmed that Artt had, barely two months after completing her PIP, re-engaged in the same type of unprofessional behavior that prompted her PIP [, and] Artt's retaliatory aggression toward DeSevo was also in violation of the Code of Conduct's non-retaliation provisions . . . ." *Id*.; *see also* Defendant's Appendix at APP. 004.

Artt had surgery on May 13, 2019, and she began FMLA leave. Defendant's Appendix at APP. 005; Petition at 6. Artt was hospitalized from May 13-May 29, 2019. Petition at 6. In addition to her own job responsibilities, Schmutte "absorb[ed] Artt's job duties" while Artt was on FMLA leave. Motion at 9.

Schmutte and Berg, in consultation with Human Resources, decided to terminate Artt's employment, a decision which Exelixis asserts "was entirely based on Artt's inappropriate managerial behavior and was completely unrelated to Artt's age." *Id*. at 8-9; *see also* Defendant's Appendix at APP. 004. On June 13, 2019, Exelixis notified Artt of its decision to terminate her employment. Motion at 9; *see also* Petition at 6. Schmutte maintains that "[b]ecause [she] had agreed to absorb Artt's job duties while [Artt] was on her approved FMLA leave, there was no immediate need to hire a replacement for Artt at the time she was terminated." Defendant's Appendix at APP. 005.

Artt's position at Exelixis remained vacant while Schmutte covered Artt's job duties for almost six months. *Id*.; Motion at 9, 12. In December of 2019, Schmutte interviewed and hired Artt's replacement, Mariana Rostamian ("Rostamian"). *See* Defendant's Appendix at APP. 005; Appendix in Support of Plaintiff's Response to Defendant's Motion for Summary Judgment[11] ("Plaintiff's Appendix") (docket entry 26) at 14. While Schmutte contends that Rostamian is "a female over the age of forty, and within Artt's protected age category[,]" *see* Defendant's Appendix at APP. 005, Schmutte estimates Rostamian's age "based on [Rostamian's] experience" but is unsure of Rostamian's exact age, *see* Plaintiff's Appendix at 14.

On October 16, 2019, Artt jointly filed a charge of discrimination ("charge") with the Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission ("TWC"), alleging discrimination due to her age and also "FMLA Retaliation[.]" *See* Defendant's Appendix at APP. 126-APP. 129. In her charge, Artt claimed that the earliest occurrence of discrimination against her took place in 2018, and the latest discriminatory conduct occurred on June 13, 2019. See *id*. at APP. 126. On June 5, 2020, the EEOC issued Artt a notice of right to sue on

---

[11]     Artt failed to number pages of her appendix filed in support of her response to Exelixis's motion for summary judgment in violation of N.D. TEX. CIV. R. 56.6(b)(3) ("Each page of the appendix must be numbered legibly in the lower, right-hand corner."). Thus, when referencing this appendix (docket entry 26), the court cites to the page number generated by ECF at the top of each page.

her charge.  Petition at 7; Defendant's Appendix at APP. 209.  On or about June 29, 2020, the TWC issued Artt a notice of right to file civil action on her charge. Petition at 7.

On July 28, 2020, Artt commenced this action against Exelixis in the 95th Judicial District Court of Dallas County, Texas, alleging discrimination on the basis of age and retaliation in violation of the Texas Commission on Human Rights Act ("TCHRA"), TEX. LABOR CODE § 21.001, *et seq.*[12]  See generally *id*.

On August 27, 2020, Exelixis timely removed the case to this court on the basis of diversity of citizenship.  *See* Notice at 2-3.  Exelixis moves for summary judgment on all of Artt's claims.  *See generally* Motion.  On September 14, 2021, Artt dropped her retaliation claim.[13]  *See* Response at 15.  Exelixis maintains that "[a]ccordingly, Exelixis is entitled to summary judgment on [Artt]'s claim for retaliation, and it must be dismissed with prejudice to the re-filing of same.  As a result, this case has been stripped to a bare bones disparate treatment age discrimination claim – which even if [Artt]'s allegations are all taken as true – her claim for age discrimination still fails and Exelixis is entitled to summary judgment as

---

[12]     Artt did not bring a retaliation claim under the FMLA.  *See generally* Petition.

[13]     In her petition, Artt asserts that Exelixis engaged in "discriminatory and harassing acts . . . ."  Petition at 6.  However, in her response to Exelixis's motion for summary judgment, Artt clarified that this "is not a harassment case."  *See* Response at 15; *see also* Reply at 3 n.4 ("Plaintiff now makes clear, in her Response, that she is not asserting a claim of harassment or hostile work environment, based on age.").

a matter of law." Reply at 10. Exelixis's motion for summary judgment is now ripe for decision.

## II.  ANALYSIS

### A.  Evidentiary Burdens on Motion for Summary Judgment

Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact, and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56.[14]  "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant make such a showing by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. See *Celotex Corporation v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant make this showing, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Id.* at 323-24. To carry this burden, the opponent must do more than simply show some metaphysical doubt as to the material facts. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986). Instead, she must show that the evidence is sufficient to

---

[14]    The disposition of a case through summary judgment "reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1197 (5th Cir. 1986).

support a resolution of the factual issue in her favor.  *Anderson*, 477 U.S. at 249.  All of the evidence must be viewed, however, in a light most favorable to the motion's opponent.  *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).

## B.  TCHRA

Artt has brought claims of age employment discrimination against Exelixis under the TCHRA.  In response, Exelixis avers that Artt "ignores the undisputed factual record demonstrating the lack of age discrimination[.]"  Reply at 2.  Under the TCHRA, "an employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer . . . fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment . . . ."  TEX. LABOR CODE § 21.051; see also *id*. § 21.101 ("The provisions of this chapter referring to discrimination because of age or on the basis of age apply only to discrimination against an individual 40 years of age or older.").

"The Supreme Court of Texas has instructed Texas courts to consult judicial interpretations of Title VII [of the Civil Rights Act of 1964, 42 U.S.C. § 2000e*, et seq*.] and follow the approach of the United States Supreme Court in interpreting Title VII when reviewing TCHRA claims."  *Ross v. Judson Independent School District*,

993 F.3d 315, 321 (5th Cir.) (citing *Mission Consolidated Independent School District v. Garcia*, 372 S.W.3d 629, 633-34 (Tex. 2012)), *cert. denied*, __ U.S. __, 142 S. Ct. 216 (2021).  Accordingly, "[t]hat means a plaintiff can prove discriminatory intent with direct evidence of what the defendant did or said or with circumstantial evidence under the *McDonnell Douglas*[15] burden-shifting framework."  *Id.* (citing *Garcia*, 372 S.W.3d at 634); see also *Garcia*, 372 S.W.3d at 633-34 ("Because one of the purposes of the TCHRA is to 'provide for the execution of the policies of Title VII of the Civil Rights Act of 1964,' we have consistently held that those analogous federal statutes and the cases interpreting them guide our reading of the TCHRA.") (citations omitted).  Only at the final "pretext" stage of the *McDonnell Douglas* analysis do federal laws and state laws provide different standards.  *Goudeau v. National Oilwell Varco, L.P.*, 793 F.3d 470, 474 (5th Cir. 2015) *(citing Squyres v. Heico Companies, L.L.C.*, 782 F.3d 224, 231 (5th Cir. 2015)).

Under the *McDonnell Douglas* framework, a plaintiff is entitled to a "presumption of discrimination" if she can meet the "'minimal' initial burden" of establishing a *prima facie* case.  *Reed v. Neopost USA, Incorporated*, 701 F.3d 434, 439 (5th Cir. 2012) (citations omitted).  "Although the precise elements of this showing will vary depending on the circumstances, the plaintiff's burden at this stage of the case 'is not onerous.'"  *Garcia*, 372 S.W.3d at 634 (quoting *Texas Department of*

---

[15]     *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802-05 (1973).

*Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

The allocation of evidentiary burdens in an employment discrimination case is well-established.  Due to the absence of direct evidence of discrimination in this case,[16] Artt must use the multi-step, "indirect" or "pretext" method of proof detailed in *McDonnell Douglas*.[17]  *Texas Tech University Health Sciences Center – El Paso v. Flores*, 612 S.W.3d 299, 305 (Tex. 2020) (citing *Alamo Heights Independent School District v. Clark*, 544 S.W.3d 755, 764, 782) (Tex. 2018)).  Specifically, under this framework, "(1) the plaintiff must first create a presumption of illegal discrimination by establishing a prima facie case, (2) the defendant must then rebut that presumption by establishing a legitimate, nondiscriminatory reason for the employment action, and (3) the plaintiff must then overcome the rebuttal evidence by establishing that the defendant's stated reason is a mere pretext."  *Id*. (citing *Clark*, 544 S.W.3d at 782); see also *Ross*, 993 F.3d at 321.

As previously mentioned, "the TCHRA and the [Age Discrimination in Employment Act] involve a different causation inquiry at the third stage of the *McDonnell Douglas* analysis."  *Reed*, 701 F.3d at 440; see also *Oldenburg v. The*

---

[16]     Direct evidence is evidence which, if believed, proves the fact of discriminatory animus without inference or presumption.  See *Brown v. East Mississippi Electric Power Association*, 989 F.2d 858, 861 (5th Cir. 1993).

[17]     "If an inference is required for the evidence to be probative as to [the defendant's] discriminatory animus in firing [the plaintiff], the evidence is circumstantial, not direct."  *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897-98 (5th Cir. 2002), *cert. denied*, 539 U.S. 926 (2003).

*University of Texas at Austin*, 860 Fed. Appx. 922, 924 (5th Cir. 2021) (per curiam);

*Arismendez v. Nightingale Home Health Care, Inc*., 493 F.3d 602, 607 (5th Cir. 2007)

("Under the Texas statute, to establish an unlawful employment practice, [the

plaintiff] need only prove that discrimination was 'a motivating factor' in the

employer's decision . . . rather than a 'but for' cause as Title VII requires.") (citations

omitted)).  To meet this burden, a plaintiff can demonstrate a genuine issue of

material fact that her employer intentionally discriminated against her by showing

"either (1) the reason stated by the employer was a pretext for discrimination, or (2)

the defendant's reason, while true, was only one reason for its conduct and

discrimination is another motivating factor ('mixed motive')."  *Michael v. City of*

*Dallas*, 314 S.W.3d 687, 691 (Tex. App. – Dallas 2010, no pet.) (citations omitted).

## 1.  *Prima Facie* Case

To establish a *prima facie* case of age discrimination under the TCHRA, Artt

must establish that she "(1) was a member of the protected class (that is, 40 years of

age or older), (2) was qualified for the position at issue, (3) suffered a final, adverse

employment action, and (4) was either (a) replaced by someone significantly younger

or (b) otherwise treated less favorably than others who were similarly situated but

outside the protected class."  *Flores*, 612 S.W.3d at 305.

Exelixis concedes that Artt is a member of the protected class.  *See* Motion at

12.  However, Exelixis argues that Artt cannot make out a *prima facie* case of age

discrimination under the TCHRA because "Artt has not shown that she was qualified for her position, nor that she was replaced, or otherwise discharged because of her age." *Id*. Exelixis also asserts that Artt cannot show that she was treated less favorably than similarly situated members outside the protected class or replaced by someone significantly younger. See *id*. at 12-14.

First, it is undisputed that Artt is 40 years of age or older, and thus a member of a protected class. Second, there is no evidence in the record to indicate that she was not qualified for her position with the defendant. Third, it is undisputed that Artt was terminated involuntarily on June 13, 2019. *See* Petition at 6; Motion at 2. The only remaining issue in analyzing the plaintiff's *prima facie* case is whether the fourth element of the test has been satisfied. Ultimately, the issue of whether or not Artt has presented enough evidence to establish a *prima facie* case is a close question. The court will assume, for the purposes of this motion, however, that Artt has established a *prima facie* case of age discrimination. The question then becomes whether Exelixis has offered a legitimate, nondiscriminatory reason for Artt's discharge and whether Artt can satisfy her pretext burden.

## 2. Legitimate, Nondiscriminatory Reason

If it is assumed that Artt has established a *prima facie* case of age discrimination, the burden then shifts to Exelixis to articulate a legitimate, nondiscriminatory reason for the adverse employment action. Exelixis contends that

it has established that Artt was terminated for legitimate, nondiscriminatory reasons and has submitted evidence that termination of Artt's employment was due to her unsatisfactory performance, as well as turnover within Artt's team.  See, *e.g.*, Motion at 21-22; *see also* Defendant's Appendix at APP. 002-APP. 004, APP. 108-APP. 113. Thus, Exelixis has successfully put forth sufficient nondiscriminatory reasons for its termination of Artt's employment.  See *Ross*, 993 F.3d at 324 ("[T]he only issue that [the court] must consider with respect to [the employer]'s reasons is whether they are legitimate . . . ."); *Wright v. Southwest Bank*, 648 F.2d 266, 267-68 (5th Cir. 1981). Accordingly, upon review of the motion, the response, the reply, and the evidence in the record, the court concludes that Exelixis has carried its burden of articulating a legitimate, nondiscriminatory reason for its decision to terminate Artt's employment.

### 3.  Pretext and Mixed-Motive

Under the TCHRA, when analysis has proceeded to this third step, the plaintiff – to avoid summary judgment – must show that age was at least a "motivating factor" in the defendant's decision to terminate the plaintiff.  See *Quantum Chemical Corporation v. Toennies*, 47 S.W.3d 473, 480 (Tex. 2001) ("'[A] motivating factor' is the correct standard of causation for the plaintiff in all TCHRA unlawful employment practice claims . . . .").  To meet this burden, Artt must prove that either (1) Exelixis's reasons to terminate her employment were pretexts for age discrimination, or (2) Exelixis's reasons, while true, only partially motivated its

conduct and discrimination is another motivating factor.  See *Reed*, 701 F.3d at 439.

"[A]n employee's 'subjective belief of discrimination' alone is not sufficient to

warrant judicial relief." *Auguster v. Vermilion Parish School Board*, 249 F.3d 400, 403

(5th Cir. 2001) (quoting *Bauer v. Albemarle Corporation*, 169 F.3d 962, 967 (5th Cir.

1999) (quoting *Equal Employment Opportunity Commission v. Louisiana Office of

Community Services*, 47 F.3d 1438, 1448 (5th Cir. 1995)).  Artt contends that

"Schmutte's preference for younger workers and her trumped-up charges against

[Artt] along with her statements and actions relating to age and her manipulation of

the investigation into [Artt]'s employment performance" demonstrate that age was a

motivating factor in Exelixis's decision to terminate Artt.  Response at 13.

 After reviewing Artt's response to Exelixis's motion for summary judgment, the

court concludes that she has failed to raise a genuine issue of material fact that

Exelixis's reasons for discharging her are mere pretexts for age discrimination.  Even if

it is assumed, *arguendo*, that Artt has presented a *prima facie* case, her claims would fail

for want of evidence from which a reasonable jury could conclude that the legitimate

reasons offered by Exelixis were pretexts for age discrimination.  Artt offers nothing

to show that an impermissible discriminatory animus motivated Exelixis.  Absent

such evidence, a verdict in favor of Artt on her claims of age discrimination would be

insupportable as a matter of law.

 Artt incorrectly asserts that several comments made by Schmutte to her

support a clear inference of discrimination to establish pretext for discrimination.  For

instance, Artt argues that comments such as Schmutte thought that Artt was in her

"late 40s[,]"[18] talked about "the need to 'motivate the millennials[,]'"[19] or referenced

Artt's "succession plan" (*i.e.*, retirement) create genuine issues of material fact as to

whether age was a motivating factor in the decision to terminate Artt.  *See* Response

at 2, 13, 16; *see also* Petition at 5.  Conversely, Exelixis maintains that Artt "has not

shown any evidence that statements allegedly made by Schmutte demonstrated any

discriminatory animus, nor that the comments were in any way connected to the

decision to terminate her employment."  Reply at 4.  The court agrees that even if

these statements were made, they do not show that Exelixis's articulated reasons for

the decision to terminate were pretextual.

"Where a plaintiff offers remarks as circumstantial evidence alongside other

alleged discriminatory conduct," the court must apply a two-part test.  *Reed*, 701 F.3d

at 441 (citing *Russell v. McKinney Hospital Venture*, 235 F.3d 219, 226 (5th Cir.

---

[18]     Artt avers that in 2016 Schmutte said, "Oh, my gosh, I thought you
were in your late 40s."  Defendant's Appendix at APP. 021.  However, Artt claims in
her charge that the earliest incident of discrimination against her took place in 2018.
See *id.* at APP. 126.  Thus, Schmutte's comment is outside the scope of Artt's charge.
See *Hoskins v. GE Aviation*, No. 3:17-CV-224-M, 2019 WL I 339246, at *4 (N.D.
Miss. Mar. 25, 2019) ("Any claims brought by Plaintiff based on conduct that
occurred [on] dates that are not covered in the charge[] are barred."), *aff'd*, 803 Fed.
Appx. 740 (5th Cir.), *cert. denied*, _ U.S._, 141 S. Ct. 144 (2020).

[19]     Exelixis contends that Schmutte's alleged comment about "motivating
millennials" was in reference to motivating Artt's "own subordinates[,]" not hiring
younger workers.  Reply at 5.

2000)).  The Fifth Circuit explained the application of that test as follows.

> [W]e note and correct an error made repeatedly by parties
> and district courts weighing age-based remarks as evidence
> of pretext.  In a circumstantial case of discrimination,
> when "the discriminatory remarks are just one ingredient
> in the overall evidentiary mix," we use a two-part test for
> deciding whether allegedly discriminatory remarks are
> probative:  the comments must demonstrate "(1)
> discriminatory animus (2) on the part of a person that is
> either primarily responsible for the challenged employment
> action or by a person with influence or leverage over the
> relevant decisionmaker."  *Goudeau*[], 793 F.3d [at] 475-76
> . . . (internal quotations omitted); see also *McMichael v.
> Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447,
> 457-58 (5th Cir. 2019).  The district court here incorrectly
> used the stricter, four-part test articulated in *Brown v. CSC
> Logic, Inc.*, 82 F.3d 651, 655 (5th Cir. 1996) [abrogated on
> other grounds by *Reeves v. Sanderson Plumbing Products, Inc.*,
> 530 U.S. 133, 134 (2000)].  That test applies only when
> age-based remarks are offered as *direct* evidence of
> discrimination; that is, when the remarks alone are being
> used to try to satisfy the plaintiff's summary judgment
> showing.  *Goudeau*, 793 F.3d at 475; *Reed*, 701 F.3d at 441.
> [When the plaintiff relies] on the remarks as just one part
> of a circumstantial case of age discrimination, the more
> flexible two-part test applies.

*Oldenburg*, 860 Fed. Appx. at 924-25 (emphasis in the original); see also *Russell*, 235

F.3d at 225-26.

Artt fails to meet the first element of the two-part test – *i.e.*, proof of

discriminatory animus.  Schmutte's comments are – at best – no more than "stray

remarks."  The Fifth Circuit "has repeatedly held that 'stray remarks' do not

demonstrate age discrimination."  *Equal Employment Opportunity Commission v. Texas*

*Instruments Incorporated*, 100 F.3d 1173, 1181 (5th Cir. 1996) (citing cases); see also *Squyres*, 782 F.3d at 236 ("old guy" and "old man" insufficient to show discriminatory animus). "To rise above the level of a stray remark, an age-related comment must 'be direct and unambiguous, allowing a reasonable jury to conclude without any inferences or presumptions that age was an impermissible factor in the decision to terminate the employee.'" *McMichael*, 934 F.3d at 457 (quoting *Texas Instruments*, 100 F.3d at 1181).

Further, the Fifth Circuit has opined that "[a]n employer's inquiry into an employee's age and retirement plans is not by itself evidence of discriminatory intent." *Rexses v. The Goodyear Tire & Rubber Company*, 401 Fed. Appx. 866, 869 (5th Cir. 2010 (per curiam). Comments about retirement or succession plans do not show discriminatory animus given that "[r]etirement is not a slur; many people look forward to it." *Martin v. Bayland Incorporated*, 403 F. Supp. 2d 578, 582 (S.D. Tex. 2005), *aff'd*, 181 Fed. Appx. 422 (5th Cir. 2006). Artt cannot point to any remark made by Schmutte or any other Exelixis employee that references age in a stereotypical or derogatory way. Even assuming *arguendo* that the remarks demonstrate age-based discriminatory animus toward Artt, the remarks alone do not provide evidence that age was a motivating factor in the decision to terminate Artt or that Exelixis's proffered reasons for her termination were mere pretexts for age discrimination, and a reasonable jury could not conclude that Schmutte's comments

demonstrated discriminatory animus.

Next, Artt generally maintains that Exelixis favored younger employees over her.  For example, Schmutte allegedly demonstrated "a preference for younger employees in her actions in excluding [Artt] and other older workers from 'social' meetings after work."  Response at 16.  Artt also generally asserts that Schmutte removed Artt and an unidentified regional director from their leadership roles and replaced the directors with two MSLs.  *See* Petition at 4.  Artt further alleges that Schmutte and Berg shared information with younger workers in lieu of or before Artt, *see* Defendant's Appendix at APP. 024, and that Exelixis awarded younger employees preferential trial assignments,[20] *see* Response at 3.  However, Artt does not point to any evidence other than her own self-serving and conclusory allegations in support of these contentions.  See, *e.g.*, Plaintiff's Appendix at 4-9; Defendant's Appendix at APP. 027-APP. 031, APP. 034.  As stated *supra*, Artt's own subjective beliefs that she was discriminated against are insufficient to create a genuine issues of material fact precluding summary judgment.

Artt's contentions are also weakened by the "same-actor inference" *viz.*, "'[c]laims that employer animus exists in termination but not in hiring seem

---

[20]     Exelixis argues that "the younger workers to whom [Artt] referred were not similarly situated to [Arrt] at all, but were [Artt]'s subordinates, receiving job assignments that were appropriate for a level below [Artt]'s.  [Artt]'s own Affidavit references trials that her subordinate MSLs were assigned to, not a Director, like [Artt]."  Reply at 7-8; *see also* Defendant's Appendix at APP. 034-APP. 035.

irrational[]'" when the same persons (Schmutte and Berg, in this case) are making both decisions as it "'hardly makes sense to hire workers from a group one dislikes . . . only to fire them once they are on the job.'" *Brown*, 82 F.3d at 658 (quoting *Proud v. Stone*, 945 F.2d 796, 797 (4th Cir. 1991) (citation omitted)); *see also* Motion at 25 ("Both Schmutte and Berg interviewed and recommended hiring Artt[.]  Schmutte and Berg were also decisionmakers that terminated Artt, and whom she alleges discriminated against her, and therefore entitles the Company to the same actor inference.").  The inference "creates a presumption that animus was not present where the same actor responsible for the adverse employment action either hired or promoted the employee at issue." *Spears v. Patterson UTI Drilling Co.*, 337 Fed. Appx. 416, 422 (5th Cir. 2009) (per curiam).  While the same-actor inference "may not automatically dispose of a plaintiff's discrimination claim," it supports Exelixis's contention that age was not a motivating factor in its decision to terminate Artt.  See *Lockett v. Wal-Mart Stores, Inc.*, 337 F. Supp. 2d 887, 901 (E.D. Tex. 2004) (citing *Brown*, 82 F.3d at 658).  In addition, Artt was well within the protected class at the time of her hire which makes it less likely that her age was a motivating factor in her termination.  That is, it is unlikely that Exelixis would hire Artt at 59 years of age only to terminate her because she reached 62 years of age.[21]

---

[21]     The fact that members of the protected class terminated Artt's employment also raises an inference that her termination was not age-related.  See *McMichael*, 934 F.3d at 460 ("[O]n numerous occasions, this court has held that

(continued...)

Artt has not shown that Exelixis's proffered reasons for terminating her employment were mere pretexts for age discrimination, or that Exelixis's stated reasons, while true, only partially motivated its conduct, and another motivating factor was Artt's age.  See *Michael*, 314 S.W.3d at 691.  Artt's subjective belief that she was a victim of discrimination is insufficient, without further evidentiary support, to overcome Exelixis's articulation of a legitimate, nondiscriminatory motive.  Artt has failed to provide any further evidentiary support to corroborate her own subjective belief that she was discriminated against because of her age.  Conclusory statements, hearsay, and testimony based merely on conjecture or subjective belief are not competent summary judgment evidence.  See *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, 506 U.S. 825 (1992).

In summary, after a thorough search of the record, including the affidavits, deposition transcripts, and exhibits, the court has found no evidence which constitutes, or even suggests, a discriminatory motive on the part of Exelixis.  In short, Artt has failed to present sufficient evidence from which a jury could infer that Exelixis's legitimate reasons for discharging her were pretexts for age discrimination.  Accordingly, Exelixis is entitled to summary judgment on Artt's TCHRA claims.

---

[21](...continued)
discrimination is less likely when the supervisor is in the same protected class as the plaintiff."); see also *Kelly v. Costco Wholesale Corporation*, 632 Fed. Appx. 779, 783 (5th Cir. 2015) (per curiam) ("[The plaintiff's] membership in the same protected class as [the supervisor] bolsters the inference that age discrimination was not the reason for his termination.").

III.  <u>CONCLUSION</u>

For the reasons set forth above, Exelixis's motion for summary judgment is

**GRANTED**.  Judgment will be entered that Artt take nothing from Exelixis on her

claims in this case.

**SO ORDERED**.

March 28, 2022.

_____

**A. JOE FISH**
**Senior United States District Judge**